EXHIBIT "3"



## MIAMI-DADE COUNTY CLERK OF THE COURTS
### HARVEY RUVIN

Contact Us     My Account     

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

### ANA BRACHO VS WESTERN WORLD INSURANCE COMPANY

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2021-011281-CA-01 | **Filing Date:** | 05/12/2021 |
| **State Case Number:** | 132021CA011281000001 | **Judicial Section:** | CA22 |
| **Consolidated Case No.:** | N/A | **Case Type:** | Insurance Claim |
| **Case Status:** | OPEN | | |

### 👥 Parties                                                                         Total Of Parties: 2   —

| Party Description | Party Name | Attorney Information | Other Attorney(S) |
|---|---|---|---|
| Plaintiff | Bracho, Ana | **B#:  (Bar Number)**70529<br>**N:  (Attorney Name)**Carlos Santi | |
| Defendant | Western World Insurance Company | | |

### 🔧 Hearing Details                                                                Total Of Hearings: 0   —

| Hearing Date | Hearing Time | Hearing Code | Description | Hearing Location |
|---|---|---|---|---|

### 🔊 Dockets                                                                          Total Of Dockets: 10   —

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 9 | 05/27/2021 | | Notice of Service of Process | Event | **WESTERN WORLD INSURANCE COMPANY** |
| | | 05/20/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 8 | 05/20/2021 | | ESummons 20 Day Issued | Event | Parties: Western World Insurance Company |
| | 7 | 05/15/2021 | | Receipt: | Event | RECEIPT#:2570115 AMT PAID:$10.00 NAME:CARLOS SANTI PROPERTY & CASUALTY LAW GROUP 2307 DOUGLAS RD. SUI MIAMI FL 33145 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:E-FILING ACH TENDER AMT:$10.00 RECEIPT DATE:05/15/2021 REGISTER#:257 CASHIER:EFILINGUSER |
| | 5 | 05/14/2021 | | Receipt: | Event | RECEIPT#:2580120 AMT PAID:$401.00 NAME:CARLOS SANTI PROPERTY & CASUALTY LAW GROUP 2307 DOUGLAS RD. SUI MIAMI FL 33145 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:E-FILING ACH TENDER |

| | Number | Date | Book/Page | Docket Entry | Event Type | AMT:$401.00 RECEIPT DATE:05/14/2021 REGISTER#:258 CASHIER:EFILINGUSER Comments |
|---|---|---|---|---|---|---|
| 📄 | 6 | 05/13/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 4 | 05/12/2021 | | Request for Production | Event | |
| 📄 | 3 | 05/12/2021 | | Notice of Interrogatory | Event | |
| 📄 | 2 | 05/12/2021 | | Complaint | Event | |
| 📄 | 1 | 05/12/2021 | | Civil Cover Sheet - Claim Amount | Event | |

◄◄ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



## HARVEY RUVIN

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2021 Clerk of the Courts. All rights reserved.



**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

    **I.**    **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>  COUNTY, FLORIDA

<u>Ana Bracho</u>
Plaintiff

Case # _____
Judge  _____

vs.

<u>Western World Insurance Company</u>
Defendant

    **II.**    **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐ $8,000 or less
- ☐ $8,001 - $30,000
- ☐ $30,001- $50,000
- ☐ $50,001- $75,000
- ☒ $75,001 - $100,000
- ☐ over $100,000.00

    **III.**    **TYPE OF CASE**    (If the case fits more than one type of case,  select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☒ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

    **IV.    REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary;
    ☐ Nonmonetary declaratory or injunctive relief;
    ☐ Punitive

    **V.    NUMBER OF CAUSES OF ACTION:** [  ]
    (Specify)

     1

    **VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☐ yes
        ☒ no

    **VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒ no
        ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☒ yes
        ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Carlos L Santi           Fla. Bar # 70529
       Attorney or party            (Bar # if attorney)

Carlos L Santi           05/12/2021
 (type or print name)          Date

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.:

Ana Bracho,

Plaintiff,

v.

Western World Insurance Company,

Defendant.

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff, Ana Bracho, (the "Insured"), hereby sues Defendant, Western World Insurance Company (the "Insurance Company"), and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.  This is an action for damages that is more than $30,000.00 exclusive of interest, costs and attorney's fees.

2.  The Insured is an individual who at all times material hereto has resided in Miami-Dade County, Florida.

3.  The Insurance Company is qualified to do business in Florida and has, at all times material hereto, been conducting business in Miami-Dade County, Florida.

4.  Venue is proper in Miami-Dade County, Florida because the contract, which forms the subject matter of this lawsuit, was executed in Miami-Dade County, Florida.

5.   All conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

## GENERAL ALLEGATIONS

6.   At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of WHO8002519 (the "Policy"). The Policy is attached hereto as Exhibit A and incorporated into the Complaint by reference herein.

7.   Accordingly, under the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's property pursuant to the terms of the policy. The damaged property is located at 10429 NW 63rd Terrace Miami, Florida 33174 (the "Property").

8.   On or about 05/25/2020, while the Policy was in full force and effect, the Property sustained a covered loss as a result of water damage (the "Loss").

9.   The Insurance Company assigned claim number 156143 to the Loss.

10. Subsequently, the Insurance Company notified the Insured it believed the Loss was not covered under the Policy. See Exhibit B. After diligent inspection of the Loss, it was obvious that the Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy but which the Insurance Company failed to indemnify for.

11. As a result of the foregoing, the Insurance Company has breached the Policy.

12. The Insured has suffered and continues to suffer damages resulting from Insurance

Company's breach of the Policy.

13. The Insured has been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Section 627.428.

## COUNT I
## BREACH OF CONTRACT

The Insured reincorporates paragraphs 1 through 13 as if fully set forth herein.

14. It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

15. The Insured has paid all premiums due and owing as contemplated by the Policy; thus, fully performing her obligations under the Policy.

16. The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

17. Furthermore, at all times material hereto, the Insured has satisfied all post-loss obligations to the best of her ability in accordance with the Policy.

18. In contrast, the Insurance Company has failed to: (i) acknowledge coverage for a portion of the Loss; and/or (ii) pay Insured a sufficient amount for the loss. As a result of the foregoing, the Insurance Company has breached the Policy.

19. As a direct and proximate result of the Insurance Company's breach of the policy, the Insured has sustained damages.

WHEREFORE, the Insured respectfully requests that this Court, enter judgment against the Insurance Company for damages, plus pre-judgment interest, court costs and reasonable attorney's fees pursuant to Section 627.428, Florida Statutes.

## <u>JURY TRIAL DEMAND</u>

The Insured hereby demands a trial by jury on all issues so triable.

Dated May 12, 2021

Respectfully submitted,

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529



Western World Insurance Group
300 Kimball Drive, Suite 500
Parsippany, NJ 07054
USA

T +1 201 847 8600
F +1 201 847 1780
Toll Free +1 866 852 2990

**westernworld.com**

August 7, 2020

Based upon our records, this is the policy issued to Ana Bracho,  Policy No. WHO8002519.

Western World Insurance Company

EXHIBIT A

[X] **Western World Insurance Co.**          [ ] **Tudor Insurance Co.**          [ ] **Stratford Insurance Co.**

# GENERAL CHANGE ENDORSEMENT

Attaching to and forming a part of:

Policy #: WHO8002471                                  Effective Date of Policy:  07/24/2018

Endorsement #: 1                                        Effective Date of Endorsement:  08/09/2018

Insured: Ana Bracho

Additional Premium   $_____          Return Premium   $_____

**The following change(s) is/are made in this policy:**

The following Mortgageholder(s) have been:

Eastern National Bank ISAOA/ATIMA
9700 South Dixie Highway #710
Miami, FL 33156
Loan # 4602119960

Premise Description 10429 NW 63rd Terrace , DORAL,FL 33178, Clause

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Dated:  08/09/2018                                      _____

Agent No. 09302                                              Authorized Agent

EXHIBIT A

## AFFIDAVIT OF JEAN MICHAEL CASTRO

State of Florida
Palm Beach County

Before me the undersigned officer duly authorized to administer oaths, personally appeared Jean Michael Castro, who is personally known to me, and after having been duly sworn, deposes and states:

1.  My name is Jean Michael Castro, I am over the age of 18, I suffer from no legal disability, and I make this affidavit based upon my personal knowledge except as otherwise stated.

2.  I work for AmWINS Access Insurance Services, LLC ("AmWINS Access") in its Palm Beach Gardens, Florida office.  AmWINS Access is a North Carolina Limited Liability Company.  AmWINS Access provides underwriting services to various insurance companies.

3.  I am an underwriter for AmWINS Access. AmWINS Access has a binding authority contract with Western World Insurance Company ("Western World").  Under that contract, AmWINS Access is authorized to issue policies according to Western World's requirements.

4.  I was AmWINS Access' underwriter for Western World's Policy No.: WHO8002519 for the insured Ana Bracho ("Bracho").  My underwriting work on this account was subject to Western World's approval.

5.  On behalf of Western World, and subject to its approval, I underwrote the property policy for Bracho, and caused Western World's Policy No.: WHO8002519 to be issued.

6.  AmWINS Access maintains its insurance policy files electronically, in a paperless environment.  Accordingly, the attached copy of the Policy is printed from an electronic database, and is a true copy of Western World's Policy No.: WHO8002519 as maintained in the ordinary course of business.

7.  Attached, as Exhibit 1 is a true copy of Western World's Policy No.: WHO8002519 for the insured Bracho. This coverage was underwritten by AmWINS Access through Western World.

EXHIBIT A

8. The attached Western World Policy No.: WHO8002519 is a true, complete copy of the policy and all endorsements as maintained by AmWINS Access in the ordinary course of its insurance business.

FURTHER AFFIANT SAYETH NAUGHT

_____

Jean Michael Castro
Underwriter
AmWINS Access Insurance Services, LLC

Sworn and Subscribed before me this __5__ day of __August__, 2020.

_____
NOTARY PUBLIC

EXHIBIT A

# Exhibit 1

EXHIBIT A

STOCK COMPANY

# WESTERN WORLD

An AIG company

# HOMEOWNERS POLICY

**POLICY NUMBER:** WHO8002519

**Prior Policy Number:** WHO8002471

**Related Policy:**

## HOMEOWNERS DECLARATIONS

**Named Insured and Mailing Address:**

Ana Bracho

10429 NW 63rd Ter

MIAMI, FL 33174

**Producer:**

AmWINS Access Insurance Services
10201 Centurion Parkway North
Suite 500
Jacksonville, FL 32256

**Policy Period:** (Mo./Day/Yr.)

From: 07/24/2019     To:07/24/2020     12:01 AM, standard time at your mailing address shown above.

SLA# A166561

**General Agent:** 09302
Producing Agent's Name: Jennifer Grimaldo
Producing Agent's Address:
11362 SW 184th St, Miami, FL 33157

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions.  The residence premises covered by this policy is located at the above address unless otherwise stated:

10429 NW 63rd Terrace, DORAL, FL 33178

| COVERAGES AND LIMITS - Homeowners 3 - Special Form | | |
|---|---|---|
| **Section I - Property Coverages** | **Limit** | **Premium** |
| A.   Dwelling | $ 230,000 | $ 1,435.00 |
| B.   Other Structures | $ 5,000 | $ Included |
| C.   Personal Property | $ 20,000 | $ Included |
| D.   Loss of Use | $ 15,000 | $ Included |
| | **Section I Premium** | $ 1,435.00 |
| **Deductible(s):** Per Forms WH0303 & HO0312 | | |
| **Section II - Liability Coverages** | **Limit** | **Premium** |
| E.   Personal Liability | $ 100,000 | $ 58.00 |
| F.   Medical Payments To Others | $ 2,500 | $ Included |
| | **Section II Premium** | $ 58.00 |
| | **Optional Coverage Endorsements** | **Premium** $ 261.00 |
| **Forms  and Endorsements:  See Schedule of Forms and Endorsements** | | |

| | | |
|---|---|---|
| "THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."   "THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU." | **TOTAL POLICY PREMIUM** | $ 1,754.00 |
| | Broker Fee | $ 35 |
| | SL Tax | $ 89.45 |
| | EMPA | $ 2.00 |
| | SL Stamp Fee | $ 1.79 |
| | $ | |
| | $ | |
| | **GRAND TOTAL** | $ 1,882.24 |

EXHIBIT A

WH 00 01 (04/19)

**HOMEOWNERS DECLARATIONS**  (continued)

**POLICY NUMBER: WHO8002519**

---

**The Named Insured is:**

[X] Individual   [ ] Partnership   [ ] Limited Liability Company   [ ] Organization/Corporation   [ ] Trust
[ ] Other _____

---

**Mortgagee/Lienholder(s)**

| | Name | Address | Loan Number |
|---|---|---|---|
| 1. | Eastern National Bank ISA OA/ATIMA | 9700 South Dixie Highway #710 Miami, FL, 33156 | |
| 2. | | | |
| 3. | | | |

---

**Loss Payee(s) - Personal Property**

| | Name | Address | Personal Property |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |

Western World Insurance Company
Administrative Office
300 Kimball Drive, Suite 500
Parsippany, New Jersey 07054
Telephone : 1-888-847-8600

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. If required by state law, this policy shall not be valid unless countersigned by **our** authorized representative.

Secretary                                         President

| Countersigned: | |
|---|---|
| 08/21/2019   CASTROJE | By: _____ |
| | Authorized Representative |

EXHIBIT A                                    WH 00 01 (04/19)

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER:<br>WHO8002519 | NAMED INSURED<br>Ana Bracho |
|---|---|

Form/Endorsement No./Edition Date          Title    (Note- Titles are indications only. See actual form for correct name.)

| | |
|---|---|
| WH0001(04_19) | HOMEOWNERS POLICY DECLARATIONS |
| HO0003(05_11) | HOMEOWNERS 3 - SPECIAL FORM |
| HO0312(05_11) | WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE |
| HO0427(05_11) | LIMITED FUNGI WET OR DRY ROT OR BACTERIA COVERAGE |
| HO0495(01_14) | LMTD WATER BACK-UP & SUMP DISCHARGE OR OVERFLOW COV |
| WH0303(06_17) | DEDUCTIBLES FORM |
| WH0401(04_16) | COVERAGE B AMENDATORY ENDORSEMENT |
| WH0410(04_16) | OUTDOOR PROPERTY EXCLUSION-WINDSTORM OR HAIL |
| WH0412(05_17) | TEMPORARY AND EMERGENCY MEASURES ENDORSEMENT |
| WH0501(01_16) | POLICY MINIMUM PREMIUM ENDORSEMENT |
| WH0502(01_16) | WORK FROM HOME COVERAGE |
| WH0503(07_16) | AI - STUDENT LIVING AWAY FROM THE RESIDENCE PREMISES |
| WH1202(08_16) | PRIVACY NOTICE |
| WH1203(07_16) | SERVICE OF SUIT |
| WH2401(10_16) | DANGEROUS ANIMAL LIABILITY EXCLUSION ENDORSEMENT |
| WH2403(01_16) | TRAMPOLINE EXCLUSION ENDORSEMENT |
| WH2404(01_16) | MODEL HOBBY OR REMOTELY PILOTED UNMANNED ARCFT EXC END |
| WH2405(01_16) | LMT OF LIAB AMENDATORY ENDT FIREARMS AGG LMT OF LIAB |
| WH2406(01_16) | SKATEBOARD OR BICYCLE RAMPS EXCLUSION ENDT |
| WH2407(01_16) | SWIMMING POOL/HOT TUB EXCLUSION ENDORSEMENT |
| WH2409(01_16) | LEAD CONTAMINATION LIABILITY EXCLUSION ENDT |
| HO0109(09_15) | SPECIAL PROVISIONS - FLORIDA |
| HO2366(01_19) | SPECIAL NOTICE - FLORIDA |
| HO2370(05_13) | WNDSTM OR HAIL EXTERIOR PAINT OR WP EXC-SEACOAST-FL |

**ADDITIONAL FORMS AND ENDORSEMENTS**

INSURED

EXHIBIT A

# HOMEOWNERS 3 - SPECIAL FORM

**AGREEMENT**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**DEFINITIONS**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

**a.** Liability for "bodily injury" or "property damage" arising out of the:

**(1)** Ownership of such vehicle or craft by an "insured";

**(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

**(3)** Entrustment of such vehicle or craft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

**b.** For the purpose of this definition:

**(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

**(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

**(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

**a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

**b.** Any other activity engaged in for money or other compensation, except the following:

**(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

**a.** You and residents of your household who are:

**(1)** Your relatives; or

**(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

**b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

**(1)** 24 and your relative; or

EXHIBIT A

**(2)** 21 and in your care or the care of a resident of your household who is your relative; or

**c.** Under Section **II:**

**(1)** With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

**(2)** With respect to a "motor vehicle" to which this policy applies:

**(a)** Persons while engaged in your employ or that of any person described in **5.a.** or **b.; or**

**(b)** Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.** "Insured location" means:

**a.** The "residence premises";

**b.** The part of other premises, other structures and grounds used by you as a residence; and

**(1)** Which is shown in the Declarations; or

**(2)** Which is acquired by you during the policy period for your use as a residence;

**c.** Any premises used by you in connection with a premises described in **a.** and **b.** above;

**d.** Any part of a premises:

**(1)** Not owned by an "insured"; and

**(2)** Where an "insured" is temporarily residing;

**e.** Vacant land, other than farm land, owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured"; or

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.** "Motor vehicle" means:

**a.** A self-propelled land or amphibious vehicle; or

**b.** Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**a.** "Bodily injury"; or

**b.** "Property damage".

**9.** "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.** "Residence employee" means:

**a.** An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

**b.** One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.** "Residence premises" means:

**a.** The one-family dwelling where you reside;

**b.** The two-, three- or four-family dwelling where you reside in at least one of the family units; or

**c.** That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

EXHIBIT A

# SECTION I - PROPERTY COVERAGES

## A. Coverage A - Dwelling

**1.** We cover:

    **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

    **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

**2.** We do not cover land, including land on which the dwelling is located.

## B. Coverage B - Other Structures

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

**2.** We do not cover:

    **a.** Land, including land on which the other structures are located;

    **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

    **c.** Other structures from which any "business" is conducted; or

    **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

**3.** The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

## C. Coverage C - Personal Property

**1. Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

**2. Limit For Property At Other Locations**

    **a. Other Residences**

    Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    **(1)** Moved from the "residence premises" because it is:

        **(a)** Being repaired, renovated or rebuilt; and

        **(b)** Not fit to live in or store property in; or

    **(2)** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

    **b. Self-storage Facilities**

    Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    **(1)** Moved from the "residence premises" because it is:

        **(a)** Being repaired, renovated or rebuilt; and

        **(b)** Not fit to live in or store property in; or

    **(2)** Usually located in an "insured's" residence, other than the "residence premises".



EXHIBIT A

**3. Special Limits Of Liability**

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.** $2,500 for loss by theft of firearms and related equipment.

**g.** $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.** $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**j.** $1,500 on portable electronic equipment that:

**(1)** Reproduces, receives or transmits audio, visual or data signals;

**(2)** Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

**(3)** Is in or upon a "motor vehicle".

**k.** $250 for antennas, tapes, wires, records, disks or other media that are:

**(1)** Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

**(2)** In or upon a "motor vehicle".

**4. Property Not Covered**

We do not cover:

**a.** Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.** Animals, birds or fish;

**c.** "Motor vehicles".

This includes a "motor vehicle's" equipment and parts. However, this Paragraph **4.c.** does not apply to:

**(1)** Portable electronic equipment that:

**(a)** Reproduces, receives or transmits audio, visual or data signals; and

**(b)** Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

**(2)** "Motor vehicles" not required to be registered for use on public roads or property which are:

**(a)** Used solely to service a residence; or

**(b)** Designed to assist the handicapped;

**d.** Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do cover model or hobby aircraft not used or designed to carry people or cargo;

**e.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

**f.** Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

 Copyright, Insurance Services Office, Inc., 2010 HO 00 03 05 11


EXHIBIT A

**g.** Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10.** Landlord's Furnishings under Section **I** - Property Coverages;

**h.** Property rented or held for rental to others off the "residence premises";

**i.** "Business" data, including such data stored in:

   **(1)** Books of account, drawings or other paper records; or

   **(2)** Computers and related equipment.

   We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

**j.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages; or

**k.** Water or steam.

### D. Coverage D - Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2. Fair Rental Value**

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

**3. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

**4. Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

### E. Additional Coverages

**1. Debris Removal**

**a.** We will pay your reasonable expense for the removal of:

   **(1)** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   **(2)** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

**b.** We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

   **(1)** Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

   **(2)** A neighbor's trees felled by a Peril Insured Against under Coverage **C;**

   provided the trees:

   **(3)** Damage a covered structure; or

   **(4)** Do not damage a covered structure, but:

     **(a)** Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or


EXHIBIT A

**(b)** Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I** - Conditions.

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

**a.** Fire or Lightning;

**b.** Explosion;

**c.** Riot or Civil Commotion;

**d.** Aircraft;

**e.** Vehicles not owned or operated by a resident of the "residence premises";

**f.** Vandalism or Malicious Mischief; or

**g.** Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.


EXHIBIT A

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** above applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**c.** Paragraph **Q.** Policy Period under Section **I** - Conditions does not apply to this coverage.

This coverage is additional insurance.

**8. Collapse**

**a.** The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse.

**b.** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**c.** This Additional Coverage - Collapse does not apply to:

**(1)** A building or any part of a building that is in danger of falling down or caving in;

**(2)** A part of a building that is standing, even if it has separated from another part of the building; or

**(3)** A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

**(1)** The Perils Insured Against named under Coverage **C**;

**(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

EXHIBIT A

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**e.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **d.(2)** through **(6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

**f.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**9. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in Coverage **C,** other than Theft.

This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

**11. Ordinance Or Law**

**a.** You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

EXHIBIT A

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

**SECTION I - PERILS INSURED AGAINST**

**A. Coverage A - Dwelling And Coverage B - Other Structures**

**1.** We insure against direct physical loss to property described in Coverages **A** and **B.**

**2.** We do not insure, however, for loss:

**a.** Excluded under Section **I** - Exclusions;

**b.** Involving collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above;

except as provided in **E.8.** Collapse under Section **I** - Property Coverages; or

**c.** Caused by:

**(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

**(a)** A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

**(b)** A storm drain, or water, steam or sewer pipes, off the "residence premises".

EXHIBIT A

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, rodents or insects;

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(i)** Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** - Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B. Coverage C - Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** - Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

EXHIBIT A

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

**a.** This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

**b.** This peril does not include loss caused by theft:

**(1)** Committed by an "insured";

**(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(3)** From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

**(4)** That occurs off the "residence premises" of:

**(a)** Trailers, semitrailers and campers;

**(b)** Watercraft of all types, and their furnishings, equipment and outboard engines or motors; or

**(c)** Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of an "insured" who is a student is covered while at the residence the student occupies to attend school as long as the student has been there at any time during the 90 days immediately before the loss.

**10. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**12. Accidental Discharge Or Overflow Of Water Or Steam**

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**b.** This peril does not include loss:

**(1)** To the system or appliance from which the water or steam escaped;

**(2)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

**(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(4)** Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section I - Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

EXHIBIT A

14. **Freezing**

   a. This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain all systems and appliances of water.

   However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

   This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**

   This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I - EXCLUSIONS**

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

   1. **Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11.** Ordinance Or Law under Section **I** - Property Coverages;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **A.1.** applies whether or not the property has been physically damaged.

   2. **Earth Movement**

   Earth Movement means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide, mudslide or mudflow;

   c. Subsidence or sinkhole; or

   d. Any other earth movement including earth sinking, rising or shifting.

   This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.d.,** is caused by an act of nature or is otherwise caused.

   However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a.** through **A.2.d.,** is covered.

   3. **Water**

   This means:

   a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

   b. Water which:

   (1) Backs up through sewers or drains; or

   (2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

   c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

   d. Waterborne material carried or otherwise moved by any of the water referred to in **A.3.a.** through **A.3.c.** of this exclusion.

EXHIBIT A

This Exclusion **A.3.** applies regardless of whether any of the above, in **A.3.a.** through **A.3.d.,** is caused by an act of nature or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.,** is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **A.7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section **I** - Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

**a.** Planning, zoning, development, surveying, siting;

**b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.** Materials used in repair, construction, renovation or remodeling; or

**d.** Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I - CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.


EXHIBIT A

## C. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

   **a.** Make reasonable and necessary repairs to protect the property; and

   **b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

   **a.** Show the damaged property;

   **b.** Provide us with records and documents we request and permit us to make copies; and

   **c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   **a.** The time and cause of loss;

   **b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

   **c.** Other insurance which may cover the loss;

   **d.** Changes in title or occupancy of the property during the term of the policy;

   **e.** Specifications of damaged buildings and detailed repair estimates;

   **f.** The inventory of damaged personal property described in **6.** above;

   **g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   **h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** - Property Coverages, stating the amount and cause of loss.

## D. Loss Settlement

In this Condition **D.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11.** Ordinance Or Law under Section **I** - Property Coverages. Covered property losses are settled as follows:

**1.** Property of the following types:

   **a.** Personal property;

   **b.** Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   **c.** Structures that are not buildings; and

   **d.** Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   **a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

     **(1)** The limit of liability under this policy that applies to the building;

     **(2)** The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

     **(3)** The necessary amount actually spent to repair or replace the damaged building.

     If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

Copyright,  Insurance Services Office, Inc.,  2010

EXHIBIT A

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.** Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

EXHIBIT A

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**I. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**1.** Reach an agreement with you;

**2.** There is an entry of a final judgment; or

**3.** There is a filing of an appraisal award with us.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

**1.** If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

**2.** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

  **a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

  **b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

  **c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** - Conditions also apply to the mortgagee.

**3.** If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

**4.** If we pay the mortgagee for any loss and deny payment to you:

  **a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

  **b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**5.** Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

**1.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**2.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

**3.** This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

Copyright,  Insurance Services Office, Inc.,  2010


EXHIBIT A

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

**S. Loss Payable Clause**

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**SECTION II - LIABILITY COVERAGES**

**A. Coverage E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. Coverage F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

**1.** To a person on the "insured location" with the permission of an "insured"; or

**2.** To a person off the "insured location", if the "bodily injury":

**a.** Arises out of a condition on the "insured location" or the ways immediately adjoining;

**b.** Is caused by the activities of an "insured";

**c.** Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

**d.** Is caused by an animal owned by or in the care of an "insured".

**SECTION II - EXCLUSIONS**

**A. "Motor Vehicle Liability"**

**1.** Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

**a.** Is registered for use on public roads or property;

**b.** Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

**c.** Is being:

**(1)** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

**(2)** Rented to others;

**(3)** Used to carry persons or cargo for a charge; or

**(4)** Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

**2.** If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

**a.** In dead storage on an "insured location";

**b.** Used solely to service a residence;

**c.** Designed to assist the handicapped and, at the time of an "occurrence", it is:

**(1)** Being used to assist a handicapped person; or

**(2)** Parked on an "insured location";

**d.** Designed for recreational use off public roads and:

**(1)** Not owned by an "insured"; or



EXHIBIT A

**(2)** Owned by an "insured" provided the "occurrence" takes place:

  **(a)** On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.**; or

  **(b)** Off an "insured location" and the "motor vehicle" is:

    **(i)** Designed as a toy vehicle for use by children under seven years of age;

    **(ii)** Powered by one or more batteries; and

    **(iii)** Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

  **(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

    **(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

    **(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

    **(c)** Cross public roads at designated points to access other parts of the golfing facility; or

  **(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

  **1.** Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

  **a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

  **b.** Rented to others;

  **c.** Used to carry persons or cargo for a charge; or

  **d.** Used for any "business" purpose.

  **2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

  **a.** Is stored;

  **b.** Is a sailing vessel, with or without auxiliary power, that is:

    **(1)** Less than 26 feet in overall length; or

    **(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

  **c.** Is not a sailing vessel and is powered by:

    **(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

      **(a)** 50 horsepower or less and not owned by an "insured"; or

      **(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

    **(2)** One or more outboard engines or motors with:

      **(a)** 25 total horsepower or less;

      **(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

      **(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

      **(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

        **(i)** You declare them at policy inception; or

        **(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

    The coverages in **(c)** and **(d)** above apply for the policy period.

    Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

  This policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

  This policy does not cover "hovercraft liability".

Copyright,  Insurance Services Office, Inc.,  2010

EXHIBIT A

**E. Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

**2. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.2.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

**3. Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

**4. "Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

**a.** Owned by an "insured";

**b.** Rented to an "insured"; or

**c.** Rented to others by an "insured";

that is not an "insured location";

**5. War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**6. Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

**7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

     Copyright, Insurance Services Office, Inc., 2010


EXHIBIT A

**F. Coverage E - Personal Liability**

Coverage **E** does not apply to:

**1.** Liability:

    **a.** For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

    **b.** Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

        **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

        **(2)** Where the liability of others is assumed by you prior to an "occurrence";

    unless excluded in **a.** above or elsewhere in this policy;

**2.** "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

**3.** "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**4.** "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**5.** "Bodily injury" or "property damage" for which an "insured" under this policy:

    **a.** Is also an insured under a nuclear energy liability policy issued by the:

        **(1)** Nuclear Energy Liability Insurance Association;

        **(2)** Mutual Atomic Energy Liability Underwriters;

        **(3)** Nuclear Insurance Association of Canada;

    or any of their successors; or

    **b.** Would be an insured under such a policy but for the exhaustion of its limit of liability; or

**6.** "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

    **a.** Repay; or

    **b.** Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

**G. Coverage F - Medical Payments To Others**

Coverage **F** does not apply to "bodily injury":

**1.** To a "residence employee" if the "bodily injury":

    **a.** Occurs off the "insured location"; and

    **b.** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**2.** To any person eligible to receive benefits voluntarily provided or required to be provided under any:

    **a.** Workers' compensation law;

    **b.** Non-occupational disability law; or

    **c.** Occupational disease law;

**3.** From any:

    **a.** Nuclear reaction;

    **b.** Nuclear radiation; or

    **c.** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

    **d.** Any consequence of any of these; or

**4.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II - ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

**A. Claim Expenses**

We pay:

**1.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**2.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;


EXHIBIT A

**3.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

**4.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

## B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

## C. Damage To Property Of Others

**1.** We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

**2.** We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section **I;**

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This Exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## D. Loss Assessment

**1.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded from coverage under Section **II** - Exclusions; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **I.** Policy Period under Section **II** - Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

## SECTION II - CONDITIONS

## A. Limit Of Liability

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".


EXHIBIT A

Our total liability under Coverage **F** for all medical expense payable under Coverage **F** for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the policy and the "named insured" shown in the Declarations;

**b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

**c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

**4.** At our request, help us:

**a.** To make settlement;

**b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

**c.** With the conduct of suits and attend hearings and trials; and

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage To Property Of Others under Section **II** - Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person  - Coverage F - Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required, as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim - Coverage F - Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

Copyright,  Insurance Services Office, Inc.,  2010

HO 00 03 05 11

EXHIBIT A

## SECTIONS I AND II - CONDITIONS

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

**1.** You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** - Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

EXHIBIT A

**2.** "Insured" includes:

    **a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

**b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

EXHIBIT A

POLICY NUMBER:  **WHO8002519**

**HOMEOWNERS**
**HO 03 12 05 11**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

**SCHEDULE**

| |
|---|
| **Windstorm Or Hail Deductible Percentage Amount:** 5 % |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**SECTION I - CONDITIONS**

**B.  Deductible**

The following special deductible is added to the policy:

With respect to the peril of Windstorm Or Hail, for any one loss, we will pay only that part of the total of all loss payable that exceeds the windstorm or hail percentage deductible.

The dollar amount of the windstorm or hail deductible is determined by multiplying the Coverage **A** Limit Of Liability shown in the Declarations by the deductible percentage amount shown in the Schedule above.

No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.

EXHIBIT A

POLICY NUMBER: **WHO8002519**

HOMEOWNERS
HO 04 27 05 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

**SCHEDULE**

These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule.

| | | |
|---|---|---|
| 1. | **Section I - Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria** | $10,000 |
| 2. | **Section II - Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria** | $50,000 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## DEFINITIONS

The following definition is added:

**"Fungi"**

    **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    **b.** Under Section **II,** this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

## SECTION I - PROPERTY COVERAGES

## E. Additional Coverages

Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.

The following Additional Coverage is added:

**13. "Fungi", Wet Or Dry Rot, Or Bacteria**

    **a.** The amount shown in the Schedule above is the most we will pay for:

       **(1)** The total of all loss payable under Section **I** - Property Coverages caused by "fungi", wet or dry rot, or bacteria;

       **(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section **I** - Property Coverages;

       **(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

       **(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

    **b.** The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    **c.** The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

       **(1)** Number of locations insured under this endorsement; or

       **(2)** Number of claims made.

    **d.** If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.


EXHIBIT A

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I - PERILS INSURED AGAINST

In Form **HO 00 03:**

**A. Coverage A - Dwelling And Coverage B - Other Structures**

Paragraph **2.c.(5)** is replaced by the following:

**(5)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is replaced by the following:

**(c)** Smog, rust or other corrosion;

**B. Coverage C - Personal Property**

**12. Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 05:**

**A.** Under Coverages **A, B** and **C:**

Paragraph **2.d.** is replaced by the following:

**d.** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is replaced by the following:

**(3)** Smog, rust or other corrosion;

## SECTION I - EXCLUSIONS

Exclusion **A.10.** is added:

**10. "Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

**a.** When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

**b.** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section **I** - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I - CONDITIONS

Condition **Q. Policy Period** is replaced by the following:

**Q. Policy Period**

This policy applies to loss or costs which occur during the policy period.

## SECTION II - CONDITIONS

Condition **A. Limit Of Liability** is replaced by the following:

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

Copyright, Insurance Services Office, Inc., 2010


EXHIBIT A

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section **II** - Coverage **E** Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is damaged;

**4.** Number of "insureds"; or

**5.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in Condition **A.** Limit Of Liability of this endorsement, Condition **B. Severability Of Insurance** is replaced by the following:

**B. Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** - Conditions, **A.** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

EXHIBIT A

POLICY NUMBER: **WHO8002519**

HOMEOWNERS
HO 04 95 01 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED WATER BACK-UP AND
# SUMP DISCHARGE OR OVERFLOW COVERAGE

**SCHEDULE**

| | |
|---|---|
| Limited Water Back-up And Sump Discharge Or Overflow Coverage Limit Of Liability: | $10,000 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section I - Property Coverages**

  **E. Additional Coverages**

    The following coverage is added:

    **Limited Water Back-up And Sump Discharge Or Overflow Coverage**

    We will pay up to the Limit Of Liability shown in the Schedule for direct physical loss, not caused by the negligence of an "insured", to property covered under Section **I** caused by water, or waterborne material, which:

    **1.** Originates from within the dwelling where you reside and backs up through sewers or drains; or

    **2.** Overflows or is discharged from a:

      **a.** Sump, sump pump; or

      **b.** Related equipment;

      even if such overflow or discharge results from mechanical breakdown or power failure. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown or power failure.

    This coverage does not increase the limits of liability for Coverage **A, B, C** or **D** stated in the Declarations.

**B. Section I - Perils Insured Against**

  With respect to the coverage provided under this endorsement, Paragraphs:

  **A.2.c.(6)(b)** in Form **HO 00 03;**

  **A.2.e.(2)** in Form **HO 00 05;**

  **2.j.(2)** in Endorsement **HO 05 24;**

  **3.j.(2)** in Endorsement **HO 17 31;** and

  **2.c.(6)(b)** in Endorsement **HO 17 32;**

  are replaced by the following:

  Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**C. Section I - Exclusions**

  With respect to the coverage provided under this endorsement:

  **1.** The **Water** Exclusion is replaced by the following:

    **Water**

    This means water which backs up through sewers or drains, or overflows or is discharged from a sump, sump pump or related equipment, as a direct or indirect result of:

    **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

    **b.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

    **c.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **C.1.a.** and **C.1.b.** of this exclusion.

    This exclusion applies regardless of whether any of the above, in Paragraphs **C.1.a.** through **C.1.c.**, is caused by an act of nature or is otherwise caused.

    This exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

    However, direct loss by fire, explosion or theft resulting from any of the above, in Paragraphs **C.1.a.** through **C.1.c.**, is covered.

  **2.** The **Power Failure** Exclusion does not apply.

All other provisions of this policy apply.

EXHIBIT A


**Homeowners**
**WH 03 03**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## DEDUCTIBLE(S)  FORM

This endorsement modifies insurance provided under the following:

**SCHEDULE \***

The Deductibles applicable to any one occurrence are shown below:

| Coverage** | Deductible | Peril*** |
|---|---|---|
| A   B   C   D | $2,500 | 2 |

\*   Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

\*\*  For each deductible listed in this Schedule, the letter or letters entered indicate the Section **I** Coverage to which that Deductible applies (A,B,C,D, or any combination thereof).

\*\*\*For each deductible listed in this Schedule, the number entered, if any, corresponds to the Peril or Perils Insured Against to which that deductible applies:

**(1)** All Section I Perils Insured Against;

**(2)** All Section I Perils Insured Against other than Windstorm or Hail, Named Storm, or Hurricane, whichever applies;

**(3)** Accidental Discharge Or Overflow Of Water Or Steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

**(4)** Freezing;

**(5)** Theft;

**(6)** Vandalism and Malicious Mischief;

**(7)** Weight of Ice, Snow or Sleet; or

**(8)** All Section I Perils Insured Against other than Windstorm or Hail, Named Storm, or Hurricane, whichever applies, but not including any peril numbered **(3)**, **(4)**, **(5)**, **(6)** or **(7)** for which a separate deductible is shown in this Schedule.

   Includes copyrighted material of Insurance Services Office, Inc., with its permission.   WH 03 03 (06/17)



EXHIBIT A

**SECTION I - CONDITIONS, B. Deductible** is deleted and replaced by the following:

**B.  Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.**  Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the applicable deductible amount shown in the above Schedule.

**2.**  Except for Windstorm or Hail, Named Storm, or Hurricane deductibles, if two or more other deductibles under this policy apply to the loss, only the highest deductible amount will apply.  If a Windstorm or Hail, Named Storm or Hurricane deductible also applies, it applies in addition to this highest deductible of two or more other deductibles.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

WH 03 03 (06/17)



EXHIBIT A

**Homeowners**
**WH 04 01**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## COVERAGE B AMENDATORY ENDORSEMENT

**SECTION I - PROPERTY COVERAGES - B.  Coverage B - Other Structures**, paragraph **3.** is amended to read as follows:

**3.**   The limit of liability for this coverage will not be more than the percentage of the limit of liability that applies to Coverage **A** as shown in the Declarations of this policy. Use of this coverage does not reduce the Coverage **A** limit of liability.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc.,
with its permission.

WH 04 01 (04/16)

EXHIBIT A

**Homeowners**
**WH 04 10**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## OUTDOOR PROPERTY EXCLUSION - WINDSTORM OR HAIL

**SECTION I - EXCLUSIONS** is amended to add the following:

**Windstorm or Hail**

Windstorm or Hail loss to:

**a.** Outdoor radio and television antennas or satellite dishes and aerials including their lead wiring, masts or towers; or

**b.** Awnings, aluminum framed screened enclosures or aluminum, framed carports; or

**c.** Solar water heating systems including solar panels, pipes supplying or returning water to solar panels, and equipment or devices controlling solar water heating systems;

**d.** Unattached:

   **(1)** Sheds;
   **(2)** Permanently installed outdoor equipment;
   **(3)** Fences;
   **(4)** Fabric windscreens on fences;
   **(5)** Slat Houses;
   **(6)** Chickees;
   **(7)** Tiki Huts;
   **(8)** Gazebos;
   **(9)** Pergolas; and
  **(10)** Structures where the exterior roof or exterior wall coverings are of thatch, lattice or slats and similar material.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc.,
with its permission.

WH 04 10 (04/16)


EXHIBIT A

**Homeowners**
**WH 04 12**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## TEMPORARY AND EMERGENCY MEASURES ENDORSEMENT

Under **SECTION I - PROPERTY COVERAGES**,

**E. Additional Coverages** is amended as follows:

Additional Coverage **2. Reasonable Repairs** is deleted and replaced by the following:

**2. Temporary And Emergency Measures**

   **a.** We will pay up to $5,000 for the reasonable costs incurred by you for necessary and temporary measures taken solely to protect covered property from further damage, when the damage or loss is caused by a Peril Insured Against and the damage or loss occurs during the policy period.

   **b.** We will not pay more than the amount in **a.** above, unless we provide you written approval to exceed the limit, but only up to the additional amount for the services we authorize.

   However, if Windstorm or Hail is covered under your policy, and a covered loss occurs during a named storm or hurricane, the amount we pay under this additional coverage is not limited to the amount in **a.** above.

   **c.** This coverage does not:

      **(1)** Increase the Limit of Liability that applies to the covered property;

      **(2)** Relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION **B.**; or

      **(3)** Pay for property not covered, or for temporary or permanent repairs resulting from a peril not covered, or for loss excluded by this policy.

This additional coverage does not prohibit us from exercising our right to repair damaged property in compliance with this Policy.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

WH 04 12 (05/17)



EXHIBIT A

**Homeowners**
**WH 05 01**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## POLICY MINIMUM PREMIUM ENDORSEMENT

**SECTIONS I and II - CONDITIONS**

**C.  Cancellation**

Subparagraph **3.** of Paragraph **C.** Cancellation is deleted and replaced with:

**3.**   When this policy is cancelled by us, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.  When this policy is cancelled by you for policies in effect for more than 90 days, the premium for the period from the date of cancellation to the expiration date will be 90% of the pro rata refund. However, if you cancel the policy effective any time during the first 90 days, the maximum premium refunded will be 75% of the annual policy premium.

Each of the perils insured under Section **I** - Property Coverages is a mandatory coverage in the policy and cannot be cancelled without cancelling the entire policy.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.

WH 05 01 (01/16)



EXHIBIT A

**Homeowners**
**WH 05 02**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## WORK FROM HOME COVERAGE

**SECTION I - PROPERTY COVERAGES**

**COVERAGE B - OTHER STRUCTURES**

The following replaces item **2. c.** :

We do not cover:

**c.** Other structures used in whole or in part for "business" purposes unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

    **1.** Duties of the "insured's" employment by another; and

    **2.** Performed solely by the "insured".

**SECTION II - LIABILITY COVERAGES**

**SECTION II - EXCLUSIONS**

The following modifies Paragraph **E.** of **SECTION II** - EXCLUSIONS, Exclusion **2.** "Business", Subparagraph **b.** with the addition of subparagraph **(3)** :

This Exclusion **E. 2** does not apply to:

**(3)** "Business" activities performed by an "insured" if the "business" activities are:

    **(a)** Only using computer devices, telephone and desk; and

    **(b)** Activities that are duties of the "insured's" employment by another; and

    **(c)** Performed solely by the "insured" on the "residence premises".

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.

WH 05 02 (01/16)



EXHIBIT A

**Homeowners**
**WH 05 03**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## ADDITIONAL INSURED - STUDENT LIVING AWAY FROM THE RESIDENCE PREMISES

### DEFINITIONS

Definition **5.**, which defines "insured", is extended to include a full-time student living away from the "residence premises", but only if that person:

1. Was a resident of your household before moving out to attend school; is under the age of 26; and is your relative; or

2. Is not your relative; is under 21; and is in your care or the care of a relative who is a resident of your household.

### SECTIONS I AND II - CONDITIONS

The coverage provided to the student only applies while that person is enrolled in school.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.

WH 05 03 (07/16)

EXHIBIT A

## PRIVACY NOTICE

**NEITHER THE BROKER NOR AGENT THAT HANDLED THIS INSURANCE NOR THE INSURER THAT HAS UNDERWRITTEN THIS INSURANCE WILL DISCLOSE NONPUBLIC PERSONAL INFORMATION CONCERNING THE BUYER TO NONAFFILIATES OF THE BROKER OR AGENT OR THE INSURER, EXCEPT AS PERMITTED BY LAW.**

WH 12 02 (08/16)

EXHIBIT A

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## SERVICE OF SUIT

The Company appoints the Commissioner of Insurance as its true and lawful attorney for acceptance of service of all legal process issued in this state in any action, suit or proceeding arising out of this contract of insurance. The Company authorizes the Commissioner to forward such process to:

In California:        Richard Glucksman, Chapman Glucksman, 11900 West Olympic Boulevard, Suite 800, Los Angeles, CA 90064

All Other States: Western World Insurance Group, Claims Department, 300 Kimball Drive, Suite 500, Parsippany, NJ 07054

The above-named are authorized to accept service of process on behalf of the Company in any legal proceeding in the applicable state(s).

EXHIBIT A

Homeowners
WH 24 01

**This Endorsement Modifies Your Policy.
Please Read It Carefully.**

## DANGEROUS ANIMAL (INCLUDING CANINE)
## LIABILITY EXCLUSION ENDORSEMENT

**A. DEFINITIONS**

Paragraph **B.** is amended to include the following definition:

"Dangerous animal" means an animal that has the ability to cause bodily harm to a human adult or child and includes but is not limited to:  canine, horse, lion, tiger, ocelot, bear, constricting snake, poisonous snake and poisonous insect; however, "dangerous animal" does not include the following:  bird, fish, domestic cat, skunk, ferret, raccoon and farm animals kept for non-commercial use.

**B. SECTION II - EXCLUSIONS**

**Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others**

The following exclusion is added:

Coverages **E** and **F** do not apply to the following:

**Dangerous Animal (including canine)**

"Bodily injury" or "property damage" arising out of direct physical contact with any "dangerous animal":

    **1.** Owned by an "insured";

    **2.** In the care, custody, or control of an "insured" or

    **3.** In the care, custody, or control of any other person while renting an "insured location" or a guest at an "insured location".

All other provisions of this policy apply.




EXHIBIT A

**Homeowners**
**WH 24 03**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## TRAMPOLINE EXCLUSION ENDORSEMENT

**SECTION II - EXCLUSIONS**

**E.  Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others**

The following exclusion is added:

Coverages **E** and **F** do not apply to the following:

**Trampoline**

"Bodily injury" or "property damage" arising out of the:

1.  Ownership of a trampoline by any insured;

2.  Maintenance or use of the trampoline; or

3.  Failure to supervise or negligent supervision of any person involving the trampoline by an "insured".

All other provisions of this policy apply.

WH 24 03 (01/16)

EXHIBIT A

**Homeowners**
**WH 24 04**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## MODEL, HOBBY OR REMOTELY PILOTED UNMANNED AIRCRAFT EXCLUSION ENDORSEMENT

**A. DEFINITIONS**

Paragraph **B.** Subparagraph **1. b. (1)** of the Homeowners 3 - Special Form DEFINITIONS section is amended to read:

**(1)** Aircraft means any contrivance used or designed for flight, including remotely piloted unmanned aircraft and model or hobby aircraft.

**B. PERSONAL INJURY COVERAGE EXCLUSION**

The following exclusion is added to Section **II** - Exclusions of the Personal Injury Coverage form, HO 24 10, if Personal Injury Coverage is provided by this policy:

This insurance does not apply to any "personal injury" arising out of the:

**(1)** Ownership of an aircraft, as defined in Paragraph **A.** above by an "insured";

**(2)** Maintenance, operation, or use of that aircraft;

**(3)** Entrustment of such aircraft by an "insured" to any person;

**(4)** Failure to supervise or negligent supervision of any person involving such aircraft by an "insured"; or

**(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such aircraft.

All other provisions of this policy apply.

Includes copyrighted material of ISO Properties, Inc., with its permission.

WH 24 04 (01/16)


EXHIBIT A

Homeowners
WH 24 05

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## LIMIT OF LIABILITY AMENDATORY ENDORSEMENT
## (FIREARMS AGGREGATE LIMIT OF LIABILITY)

### SCHEDULE

**Firearms Aggregate Limit Of Liability - Coverage E**          $100,000

**SECTION II - CONDITIONS**

**A.  Limit of Liability**

Paragraph **A.** Limit of Liability is deleted and replaced by the following:

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit of Liability shown in the Declarations.  This limit is the same regardless of the number of "insureds", claims made or persons injured.  All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

The most we will pay for the total of all damages under Coverage **E** for one or more "occurrences" arising out of the:

   **(1)** Ownership of firearm(s) by an "insured";

   **(2)** Maintenance or use of any firearm;

   **(3)** Entrustment of such firearm(s) by an "insured" to any person;

   **(4)** Failure to supervise or negligent supervision of any person involving such firearm(s) by an "insured"; or

   **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such firearm(s)

is the Aggregate Limit shown above.

All other provisions of this policy apply.



**Homeowners**
**WH 24 06**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## SKATEBOARD OR BICYCLE RAMPS EXCLUSION ENDORSEMENT

**SECTION II - EXCLUSIONS**

**E.  Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others**

The following exclusion is added:

Coverages **E** and **F** do not apply to the following:

**Skateboard or Bicycle Ramps**

"Bodily injury" or "property damage" arising out of the:

1.  Ownership of a skateboard ramp or bicycle ramp by any "insured";

2.  Maintenance, operation or use of the skateboard ramp or bicycle ramp; or

3.  Failure to supervise or negligent supervision of any person involving the skateboard ramp or bicycle ramp by an "insured".

All other provisions of this policy apply.

WH 24 06 (01/16)

EXHIBIT A

**Homeowners**
**WH 24 07**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## SWIMMING POOL/HOT TUB EXCLUSION ENDORSEMENT

**SECTION II - EXCLUSIONS**

**E.  Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others**

The following exclusion is added:

Coverages **E** and **F** do not apply to the following:

**Swimming Pool/Hot Tub**

"Bodily injury" or "property damage" arising out of the:

1.  Ownership of a swimming pool, diving board, pool slide, or hot tub by any "insured";

2.  Maintenance, operation or use of the swimming pool, diving board, pool slide or hot tub; or

3.  Failure to supervise or negligent supervision by an insured of a hot tub or the swimming pool area, including diving board or pool slide.

All other provisions of this policy apply.

WH 24 07 (01/16)

EXHIBIT A

**Homeowners**
**WH 24 09**

**This Endorsement Modifies Your Policy.**
**Please Read It Carefully.**

## LEAD CONTAMINATION LIABILITY EXCLUSION ENDORSEMENT

**SECTION II - EXCLUSIONS**

**E. Coverage E - Personal Liability** and **Coverage F - Medical Payments To Others**

The following exclusion is added:

Coverages **E** and **F** do not apply to the following:

**Lead Contamination**

"Bodily injury" or "property damage" arising out of the:

1. Existence of lead on the "residence premises";

2. Ingestion, inhalation or absorption of lead in any form; or

3. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or in any way respond to, or assess the effects of lead.

All other provisions of this policy apply.

WH 24 09 (01/16)

EXHIBIT A

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS - FLORIDA

## DEFINITIONS

The following definitions are added:

**"Fungi"**

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

b. Under Section **II,** this does not include any fungi that are in, are on, or are contained in a good or product intended for consumption.

**"Hurricane Occurrence"**

A "hurricane occurrence" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service, with a duration that:

a. Begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

b. Continues for the time period during which the hurricane conditions exist anywhere in Florida; and

c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**"Catastrophic Ground Cover Collapse"**

"Catastrophic ground cover collapse" means geological activity that results in all of the following:

a. The abrupt collapse of the ground cover;

b. A depression in the ground cover clearly visible to the naked eye;

c. "Structural damage" of the "principal building" insured under this Policy, including the foundation; and

d. The "principal building" being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that "principal building".

"Catastrophic ground cover collapse" coverage does not apply to Coverage **B** structures.

**"Principal Building"**

In Forms **HO 00 02, HO 00 03, HO 00 04** and **HO 00 05:**

"Principal building" means the dwelling where you reside on the "residence premises" shown in the Declarations, including structures attached to the dwelling. "Principal building" does not include any other buildings or structures at that location.

In Form **HO 00 06:**

"Principal building" means the unit where you reside shown as the "residence premises" in the Declarations. "Principal building" does not include any other buildings or structures at that location.

**"Structural Damage"**

"Structural damage" means a "principal building", regardless of the date of its construction, has experienced the following:

a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement-related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement-related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose or location;

 Copyright,  Insurance Services Office, Inc.,  2014

EXHIBIT A

**c.** Damage that results in listing, leaning or buckling of the exterior load-bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**"Primary Structural Member"**

"Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**"Primary Structural System"**

"Primary structural system" means an assemblage of "primary structural members".

**SECTION I - PROPERTY COVERAGES**

Paragraph **E.10.k.(2)(d)** is deleted in Form **HO 00 05** only.

**E. Additional Coverages**

The following Additional Coverage is added:

**"Fungi", Wet Or Dry Rot, Or Bacteria**

**a.** We will pay up to $10,000 for:

**(1)** The total of all loss payable under Section **I** - Property Coverages caused by "fungi", wet or dry rot, or bacteria;

**(2)** The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I - Property Coverages;

**(3)** The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

**(4)** The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

**b.** The coverage described in **a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

**c.** $10,000 is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

**(1)** Number of locations insured; or

**(2)** Number of claims made.

**d.** If there is covered loss or damage to covered property not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

In Form **HO 00 06:**

Paragraph **D.7.a.** is replaced by the following:

**D. Additional Coverages**

**7. Loss Assessment**

**a.** We will pay up to $2,000 per occurrence for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this Policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or


EXHIBIT A

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

However, the maximum amount of loss assessment coverage for any one property loss, regardless of the number of assessments, shall be an amount equal to your unit-owner's loss assessment coverage limit in effect one day before the date of the occurrence. Any changes to the limits of your unit-owner's coverage for loss assessments made on or after the day before the date of the occurrence are not applicable to such loss.

A deductible amount, not to exceed the lesser of:

**(3)** The deductible amount under this Policy equal to that which applies to the peril of fire; or

**(4)** $250;

applies to loss covered under this Additional Coverage. We will pay only that part of the total of all loss payable under this Additional Coverage that exceeds that deductible amount. However, if a deductible was or will be applied to other property loss sustained by you resulting from the same direct loss, then no deductible applies to this coverage.

**SECTION I - PERILS INSURED AGAINST**

In Forms **HO 00 02, HO 00 04** and **HO 00 06:**

**12.** **Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(5)** in Forms **HO 00 02** and **HO 00 06 (b.(4)** in Form **HO 00 04)** is replaced by the following:

**(5)** To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 03:**

**A.** **Coverage A - Dwelling And Coverage B - Other Structures**

Paragraph **2.c.(5)** is replaced by the following:

**(5)** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is replaced by the following:

**(c)** Smog, rust or other corrosion;

**B.** **Coverage C - Personal Property**

**12.** **Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

For Coverage **C**, the following peril is added:

**17.** **"Catastrophic Ground Cover Collapse"**

In Form **HO 00 05:**

Under Coverages **A, B** and **C:**

Paragraph **2.d.** is replaced by the following:

**d.** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

EXHIBIT A

Paragraph **2.e.(3)** is replaced by the following:

    **(3)** Smog, rust or other corrosion;

In Forms **HO 00 02, HO 00 04** and **HO 00 06,** the following peril is added:

**17."Catastrophic Ground Cover Collapse"**

**SECTION I - EXCLUSIONS**

Paragraph **2.** is replaced by the following:

**2. Earth Movement**

    Earth movement means:

    **a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

    **b.** Landslide, mudslide or mudflow;

    **c.** Subsidence or sinkhole; or

    **d.** Any other earth movement, including earth sinking, rising or shifting.

    This Exclusion **2.** applies regardless of whether any of the above, in **2.a.** through **2.d.,** is caused by an act of nature or is otherwise caused.

    However, direct loss by fire, explosion or theft resulting from any of the above, in **2.a.** through **2.d.,** is covered.

    This Exclusion **2.** does not apply to loss by "Catastrophic ground cover collapse".

(This is Exclusion **A.2.** in Forms **HO 00 03** and **HO 00 05.** )

The following exclusion is added:

**"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria, meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

    **a.** When "fungi", wet or dry rot, or bacteria result from fire or lightning; or

    **b.** To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section **I** - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

**SECTION I - CONDITIONS**

**C. Duties After Loss**

Paragraph **1.** is replaced by the following:

    **1.** Give prompt notice to us or our agent, except that a claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this Policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

    This provision concerning time for submission of a claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this Policy under the Suit Against Us Condition, including any amendment to that condition.

**D. Loss Settlement**

In Forms **HO 00 02, HO 00 03** and **HO 00 05:**

Paragraph **2.d.** is replaced by the following:

    **d.** We will settle the loss as follows:

    **(1)** If the Mobilehome Endorsement is not made a part of this Policy, we will settle the loss as noted in **2.a.** of this provision. If **2.a.** is not applicable, we will settle the loss as follows:

        **(a)** We will initially pay the actual cash value of the building damage, minus any applicable deductible.

        **(b)** We will then pay the necessary amounts actually spent to repair or replace the damaged building as work is performed and expenses are incurred.

        **(c)** If a total loss, we will pay the replacement cost amount without deduction for depreciation.

Copyright,  Insurance Services Office, Inc.,  2014



EXHIBIT A

**(2)** If the Mobilehome Endorsement is made a part of this Policy:

**(a)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **2.b.** of this provision.

However, if the cost to repair or replace the damage is both:

**(i)** Less than 5% of the amount of insurance in this Policy on the building; and

**(ii)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **2.b.** of this provision whether or not actual repair or replacement is complete.

**(b)** You may disregard the replacement cost loss settlement provisions and make claim under this Policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

Paragraph **2.e.** is deleted.

In Form **HO 00 06:**

Paragraph **2.** is replaced by the following:

**2.** Coverage **A** - Dwelling, at the actual cost to repair or replace.

In this provision, the terms "repaired" and "replaced" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **D.10.** Ordinance Or Law under Section **I** - Property Coverages.

Paragraph **F. Appraisal** is replaced by the following:

**F.  Mediation Or Appraisal**

If you and we:

**1.** Are engaged in a dispute regarding a claim under this Policy, either party may demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss amount must be $500 or more, prior to application of the deductible, or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and you have not rescinded the settlement within three business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the total cost for that rescheduled conference. However, if we fail to appear at a mediation conference without good cause, we will pay the actual cash expenses you incur in attending the conference and also pay the total cost for the rescheduled conference.

**2.** Fail to agree on the amount of loss, either party may request an appraisal of the loss. However, both parties must agree to the appraisal. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

EXHIBIT A

Each party will:

    **a.** Pay its own appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

In Form **HO 00 06:**

Paragraph **G. Other Insurance And Service Agreement** is replaced by the following:

**G. Other Insurance And Service Agreement**

If a loss covered by this Policy is also covered by other insurance or a service agreement covering the same property, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

However, if a loss covered by this Policy is covered by other insurance covering the same property and such other insurance is excess insurance over the amount recoverable under any other policy covering the same property, we will pay only the proportion of the loss that the limit of liability that applies under this Policy bears to the total amount of such insurance covering the loss.

Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

Paragraph **H. Suit Against Us** is replaced by the following:

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this Policy and the action is started within five years after the date of loss.

Paragraph **I. Our Option** is replaced by the following:

**I. Our Option**

In Forms **HO 00 02, HO 00 03** and **HO 00 05:**

If at the time of loss:

**1.** The Mobilehome Endorsement is made a part of this Policy, and we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**2.** The Mobilehome Endorsement is not made a part of this Policy and the damaged property is:

    **a.** Not insured for Replacement Cost Loss Settlement as outlined in Section **I** - Conditions, Loss Settlement, and we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

    **b.** Insured for Replacement Cost Loss Settlement as outlined in Section **I** - Conditions, Loss Settlement, we will pay the amount of loss as noted in Paragraph **D.2.d.(1)** of the Loss Settlement provision.

Paragraph **J. Loss Payment** is replaced by the following:

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to receive payment. Loss will be payable upon the earliest of the following:

**1.** 20 days after we receive your proof of loss and reach written agreement with you;

**2.** 60 days after we receive your proof of loss and:

    **a.** There is an entry of a final judgment; or

    **b.** There is a filing of an appraisal award or a mediation settlement with us; or

**3.** If payment is not denied, within 90 days after we receive notice of an initial, reopened or supplemental claim. However, this provision **(J.3.)** does not apply if factors beyond our control reasonably prevent such payment.

Paragraph **R. Concealment Or Fraud** is replaced by the following:

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this Policy if, whether before or after a loss, an "insured" has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

Copyright,  Insurance Services Office, Inc.,  2014

EXHIBIT A



**3.** Made material false statements;

relating to this insurance.

However, if this Policy has been in effect for more than 90 days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

(This is Paragraph **Q.** in **HO 00 04.**)

## SECTION II - EXCLUSIONS

**E.** **Coverage E - Personal Liability And Coverage F - Medical Payments To Others**

Paragraph **8. Controlled Substances** is replaced in all forms and Endorsement **HO 24 73** by the following:

**8.** **Controlled Substances**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

(This is Exclusion **9.** in **HO 24 73.**)

## SECTION II - CONDITIONS

Paragraph **A. Limit Of Liability** is replaced by the following:

**A.** **Limit Of Liability**

**1.** Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Limit Of Liability for Coverage **E** as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

**2.** **Sublimit Of Liability**

Subject to Paragraph **1.** above, our total liability under Coverage **E** for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sublimit is within, but does not increase, the Coverage **E** limit of liability.

**3.** The limit of liability in **1.** above and sublimit in **2.** above apply regardless of the number of "insureds", claims made or persons injured.

**4.** Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Limit Of Liability for Coverage **F** as shown in the Declarations.

This condition does not apply with respect to damages arising out of "fungi", wet or dry rot, or bacteria when Endorsement **HO 03 34** is attached.

Paragraph **J. Concealment Or Fraud** is replaced by the following:

**J.** **Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made material false statements;

relating to this insurance.

However, if this Policy has been in effect for more than 90 days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

## SECTIONS I AND II - CONDITIONS

Paragraph **C. Cancellation** is replaced by the following:

**C.** **Cancellation**

**1.** You may cancel this Policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

**2.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, we may cancel this Policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel during this period by letting you know at least 10 days before the date cancellation takes effect.

EXHIBIT A

**b.** If:

**(1)** There has been a material misstatement or fraud related to the claim;

**(2)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(3)** We have paid policy limits;

we may cancel during this period by letting you know at least 45 days before the date cancellation takes effect.

**c.** We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

However, this provision **(C.2.c.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**3.** If the conditions described in Paragraph **C.2.** do not apply, we may cancel only for the following reasons:

**a.** When this Policy has been in effect for 90 days or less, we may cancel immediately if:

**(1)** There has been a material misstatement or misrepresentation or failure to comply with underwriting requirements; and

**(2)** The "residence premises" has not been insured by us or any of our affiliated insurers for at least five years immediately prior to the date of the written notice.

**b.** We may also cancel this Policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**(2)** When this Policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

**(a)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(b)** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**(c)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household.

Except as provided in Paragraphs **C.3.a.** and **C.3.b.(1)** of this provision, we will let you know of our action at least:

**(a)** 120 days before the date cancellation takes effect if the "residence premises" has been insured by us or any of our affiliated insurers for at least five years immediately prior to the date of the written notice; or

**(b)** 20 days before the date cancellation takes effect in all other cases.

**(3)** When this Policy has been in effect for more than 90 days, we may cancel:

**(a)** If there has been a material misstatement;

**(b)** If the risk has changed substantially since the Policy was issued;

**(c)** In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

**(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

   Copyright,  Insurance Services Office, Inc.,  2014   HO 01 09 09 15

EXHIBIT A

**(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

**(f)** On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

**(4)** When this Policy has been in effect for more than 90 days, we may not cancel:

**(a)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household; or

**(b)** On the basis of credit information available in public records.

**(5)** If any of the reasons listed in Paragraphs **C.3.b.(3)(a) - (f)** apply, we will provide the following notice:

**(a)** If the "residence premises" has been insured by us or any of our affiliated insurers for at least five years immediately prior to the date of the written notice, we will let you know at least 120 days before the date cancellation takes effect;

**(b)** If the date of cancellation becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the date cancellation takes effect; or

**(c)** If the date of cancellation becomes effective on or after June 1 and before December 1, we will let you know:

**(i)** At least 100 days before the date cancellation takes effect; or

**(ii)** By June 1;

whichever is earlier.

If more than one notice requirement applies, we will provide the broadest notice.

**4.** If the date of cancellation becomes effective during a "hurricane occurrence":

**a.** The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the Policy remains in effect.

However, this provision **(C.4.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**5.** We may cancel this Policy after giving at least 45 days' notice if the Florida Office of Insurance Regulation determines and approves of our plan that early cancellation of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition, lack of adequate reinsurance coverage for hurricane risk or other relevant factors.

**6.** When this Policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**7.** If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

Paragraph **D. Nonrenewal** is replaced by the following:

**D. Nonrenewal**

**1.** We may elect not to renew this Policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal. Proof of mailing will be sufficient proof of notice.

**a.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this Policy only if:

**(1)** You have not paid the renewal premium;

EXHIBIT A

**(2)** There has been a material misstatement or fraud related to the claim;

**(3)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(4)** We have paid policy limits.

We may do so by letting you know at least 45 days before the expiration date of the Policy.

**b.** We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

However, this provision **(D.1.b.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**c.** If the conditions described in Paragraph **D.1.a.** do not apply, we may elect not to renew this Policy by providing the following notice before the expiration date of this Policy:

**(1)** If the "residence premises" has been insured by us or any of our affiliated insurers for at least five years immediately prior to the date of the written notice, we will let you know at least 120 days before the expiration date of this Policy;

**(2)** If we elect not to renew this Policy due to a revision in coverage for sinkhole loss or "catastrophic ground cover collapse", we will let you know at least 100 days before the expiration date of this Policy; or

**(3)** If:

    **(a)** The date of nonrenewal becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the expiration date of this Policy; or

    **(b)** The date of nonrenewal becomes effective on or after June 1 and before December 1, we will let you know:

        **(i)** At least 100 days before the expiration date of this Policy; or

        **(ii)** By June 1;

    whichever is earlier.

If more than one notice requirement applies, we will provide the broadest notice.

**2.** We will not nonrenew this Policy:

**a.** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**b.** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property;

**c.** On the basis of filing of claims for loss caused by sinkhole damage, unless:

    **(1)** The total of such property claim payments equals or exceeds the policy limits of the Policy in effect on the date of loss for property damage to the covered building(s); or

    **(2)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based;

**d.** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household; or

**e.** On the basis of credit information available in public records.

**3.** If the date of nonrenewal becomes effective during a "hurricane occurrence":

**a.** The expiration date of this Policy will not become effective until the end of the "hurricane occurrence"; and

**b.** We shall be entitled to collect additional premium for the period the Policy remains in effect.

However, this provision **(D.3.)** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

**4.** We may nonrenew this Policy after giving at least 45 days' notice if the Florida Office of Insurance Regulation determines and approves of our plan that early nonrenewal of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition, lack of adequate reinsurance coverage for hurricane risk or other relevant factors.

Copyright, Insurance Services Office, Inc., 2014

EXHIBIT A

The following conditions are added:

**H. Renewal Notification**

If we elect to renew this Policy, we will let you know, in writing:

**1.** Of our decision to renew this Policy; and

**2.** The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this Policy. Proof of mailing will be sufficient proof of notice.

**I. Notification Regarding Access**

If we require access to an "insured" or claimant or to the insured property that is the subject of a claim, we must provide at least 48 hours' notice to you or the claimant, or your or the claimant's public adjuster or legal representative, before scheduling a meeting with you, the "insured" or the claimant or prior to conducting an on-site inspection of the insured property. You or the claimant may deny access to the property if the notice has not been provided or may waive the 48-hour notice.

All other provisions of this Policy apply.

EXHIBIT A

**HOMEOWNERS**
**HO 23 66 01 19**

# SPECIAL NOTICE - FLORIDA

The following notice is added:

## LAW AND ORDINANCE: LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. PLEASE DISCUSS WITH YOUR INSURANCE AGENT.

## FLOOD INSURANCE: YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE. YOUR HOMEOWNER'S INSURANCE POLICY DOES NOT INCLUDE COVERAGE FOR DAMAGE RESULTING FROM FLOOD EVEN IF HURRICANE WINDS AND RAIN CAUSED THE FLOOD TO OCCUR. WITHOUT SEPARATE FLOOD INSURANCE COVERAGE, YOU MAY HAVE UNCOVERED LOSSES CAUSED BY FLOOD. PLEASE DISCUSS THE NEED TO PURCHASE SEPARATE FLOOD INSURANCE COVERAGE WITH YOUR INSURANCE AGENT.

EXHIBIT A

**HOMEOWNERS**
**HO 23 70 05 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WINDSTORM OR HAIL EXTERIOR PAINT OR WATERPROOFING EXCLUSION - SEACOAST - FLORIDA

**Exclusion**

We will not pay for loss caused by windstorm or hail, including windstorm during a hurricane, to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of any building or structure covered under this policy, unless the building or structure to which such loss occurs also sustains other loss by windstorm or hail in the course of the same storm event. But such coverage applies only if windstorm or hail is a covered Peril Insured Against under Section **I.**

All other provisions of this policy apply.

 Copyright, Insurance Services Office, Inc., 2012

EXHIBIT A



**300 Kimball Drive, Suite 500**
**Parsippany, NJ 07054**
**USA**

**T +1 201 847 8600**
**F +1 201 847 1780**
**Toll Free +1 866 852 2990**
R.Teglia@westernworld.com
westernworld.com

March 10, 2021

*Sent Via Email*

Santos Public Adjusters
On behalf Of
Ana Bracho
101 Adams Ave.
Magee, MS 39111

RE:     Insured:            Ana Bracho
        Claim No.:          156143
        Loss Location:      10429 NW 63rd Terrace Miami, FL 33174
        Date of Loss:       05/25/2020
        Policy No.:         WHO8002519

Dear Ms. Bracho,

We recently received your claim for the above referenced loss. Based on the information you provided, your policy, and the inspection we have determined that the damage caused by water at 10429 NW 63rd Terrace Miami, FL 33174 is a covered loss.  However, we are unable to provide coverage and payment for a portion of the claim.

You have requested through the agent, AmWins Access Insurance Services, that Western World provide insurance coverage for the claim referenced above.

Please show the adjuster's estimate to your contractor and have that person contact the adjuster with any questions about price or scope. Please notify us of any potential changes in scope or price. Unapproved changes will not be covered.

Your Dwelling damage claim has been calculated as follows:

| | |
|---|---|
| Replacement Cost | $ 3,053.38 |
| Less Recoverable Depreciation | $      0.00 |
| Actual Cash Value | $ 3,053.38 |
| Less Deductible | $ 2,500.00 |
| Net Claim Payable | $    553.38 |

One check for $553.38 has been authorized and will be sent to you separately. Unfortunately there is no coverage for the tile floors from construction and workmanship issues, as this is excluded by the policy.



EXHIBIT B

If the full cost allowed for repair or replacement is found to be insufficient you must contact Western World Insurance to discuss any supplemental claim before repairs are initiated. Unapproved changes will not be covered.

### *FACTS OF THIS CLAIM*

On May 28, 2020 you reported that a flooded porch allowed water to enter the home and resulted in interior water damage to the master bedroom.  The inspection has been completed on the home and found damage to the master bedroom. However there was no covered damage found to the floor tiles based on the inspection completed on February 22, 2021 by the tile expert from Nativo Inc. Flooring & Construction Consultant, Mauricio Rodriguez.(please see the attached report)  Unfortunately, Western World is unable to provide coverage for the tile, as the improperly installed tile in the master bathroom is excluded by the policy.

### *WESTERN WORLD'S COVERAGE POSITION*

Please refer to your **HO 00 03 05 11 HOMEOWNERS 3 – SPECIAL FORM:**

**SECTION I – PERILS INSURED AGAINST**
**A.    Coverage A – Dwelling And Coverage B – Other Structures**
    **1.**      We insure against direct physical loss to property described in Coverages **A** and **B.**
    **2.**      We do not insure, however, for loss:
        **a.**    Excluded under Section I – Exclusions;

        ****
        **c.**    Caused by:
            ****
            **(6)**    Any of the following:
                **(a)**    Wear and tear, marring, deterioration;
                **(b)**    Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

            ****

**SECTION I – EXCLUSIONS**
**A.**    We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
    ****
**B.**    We do not insure for loss to property described in Coverages **A** and **B** caused by any of   the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.
    ****
    **3.**    Faulty, inadequate or defective:
        ****
        **b.**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        **d.**    Maintenance;
        of part or all of any property whether on or off the "residence premises".

The coverage issues that we have now investigated and analyzed on this claim involve the Homeowners 3 – Special Form above quoted, B.3.b. designs, specifications, workmanship and construction, excludes coverage for loss or damage from improperly installed tile. These



EXHIBIT B

exclusions apply regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

An independent field adjuster assigned by Western World inspected the property with your Public adjuster and the tile Expert from Nativo Inc, Mauricio Rodriguez.  During the inspection there was no covered damage found to the tile flooring in the home. Therefore, Western World is unable to provide coverage for the tile repairs.

Although Western World is today declining coverage for portions of this claim, we will keep our file open for thirty days in case you wish to discuss our decision or wish to give us more or different information that may be relevant.  We reserve the right to modify our position based on any such new or different information.

We expressly reserve the right to assert any and all additional rights and defenses which a further investigation may reveal to be applicable for the loss claim.  If you intend to proceed with litigation, strict compliance with the policy provisions will be required.  No suit or action may be brought against us unless there has been full compliance with the policy terms.  The Company does not waive any provisions or stipulation of the Policy or waive any right or defense under such Policy whether or not identified above.

Hopefully, this letter has provided you with a clear explanation of our position regarding your insurance coverage for this claim.  However, if you have any further questions concerning this letter or your claim, please feel free to call me at your convenience at 201-636-9702.

Sincerely,

*Rich Teglia*

Rich Teglia
Property Claims Specialist

EXHIBIT B

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.:

Ana Bracho,

Plaintiff,

v.

Western World Insurance Company,

Defendant.

## PLAINTIFF'S NOTICE OF SERVING FIRST SET OF INTERROGATORIES

Plaintiff, Ana Bracho, pursuant to the applicable rule of the Florida Rules of Civil Procedure, propounds the following First Set of Interrogatories upon Defendant, Western World Insurance Company (the "Insurance Company"), to be answered in writing, under oath, within the time specified.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: Western World Insurance Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured(s)
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**
_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.:

Ana Bracho,

Plaintiff,

v.

Western World  Insurance Company,

Defendant.

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

Plaintiff, Ana Bracho, pursuant to the applicable rule of the Florida Rules of Civil Procedure, propounds the following First Set of Interrogatories upon Defendant, Western World  Insurance Company (the "Insurance Company"), to be answered in writing, under oath, within the time specified.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: Western World  Insurance Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

<u>DEFINITIONS AND INSTRUCTIONS</u>

1.      Insert your answers in the space provided following each question. If additional space is needed, so indicate in the space provided, prepare your answers on a separate paper, and attach the additional paper to your answers.

2.      Separately answer each interrogatory, and each subsection of each interrogatory. The term "you" and "your" means the party or parties to which this request is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, accountants, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

3.      The terms "Insurance Company" or "Defendant" means the defendant in this action to which these Interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on their behalf. The terms "Insurance Company" or "Defendant" also includes the party's divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and accountants as well as each partnership in which it is a partner, and includes any other person, acting or purporting to act on its behalf.

4.      The terms "you" and "your" mean the party or parties to which these interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on its behalf.

5.      The "Complaint" means the Complaint filed by the Insured in this action.

6.      The term "Claim" means any statement, concept, assertion, idea, allegation, fact, law, upon which Plaintiff demands that he/she has suffered damages, or has a right to payment, as the result of any act or omission of Defendant.

7.     The terms "person" or "persons" mean any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, and group of natural persons or other entity, and includes any other person acting on behalf of a person.

8.     The term "contract" means the insurance contract between the parties.

9.     The term "communication" means any information given, whether oral or written; any oral or written statement, conference, consultation, dialogue, colloquy, discussion, conversation, agreement, the sharing of knowledge by one with another, bargaining preparatory to making a contract or any expression of any kind.

10.     The term "document" means and includes any kind of written, typed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working papers, transcriptions, agendas, reports, recordings of telephone or other conversations, of interviews, of conferences or of meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements, schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and

output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had access. "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

11.     The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

12.     As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

13.     The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

14.     The terms "refer" or "relate to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

15.     The term "locate" or "location" means to state the present whereabouts of each Document and to identify the persons having possession, custody or control thereof

16.     The term "to date" shall mean the date on which you answer these interrogatories.

18.     The term "including" means "including but not limited to".

19.     "Relating to" or "relevant to" means embodying, pertaining to, concerning, involving, constituting, comprising, reflecting, discussing, evidencing, referring to, consisting of, or having any logical or factual connection whatever with the subject matter in question.

20.     The term "Identify," when used with reference to a natural person, means state:

    (a)     his full name and address (or, if the present address is not known, his last known address).

    (b)     the full name and address of each of his employers, each corporation of which he is an officer or director and each business in which he is a principal.

    (c)     his present (or, if the present is not known, his last known) position and his position or positions at the time of the act to which the interrogatory answer relate, and

    (d)     such other information sufficient to enable Plaintiff to identify the person.

21.     "Identify," when used with reference to any entity other than a natural person,

means:

    (a)     state the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity, and if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization.

22.     "Identify," when used with reference to a document or written communication,

means state:

    (a)     its nature (e.g., letter, telegram, floppy disc, computer printout, memorandum, chart, report or study), date, author, date and place of preparation and the name and address of each addressee, if there is an addressee;

    (b)     the identity of each signer to the document or communication;

    (c)     the title or heading of the document or communication;

    (d)     its substance;

    (e)     its present (or, if the present is not known, the last known) location and custodian.

    (f)     the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (I) respondent and (ii) any other person (naming such other person) who, at any time, either received, transmitted or otherwise disposed of

such document or communication and each copy thereof;

(g)     the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

23.    "Identify," when used with reference to an oral transaction or oral communication, means state:

(a)     its nature (e.g., telephone call, conversation in person, etc.)

(b)     the date and place thereof.

(c)     the identity and address of each person participating therein, present during or witness to any part thereof.

(d)     identify each document in which such transaction or communication was recorded, described or referred to.

24. "Identify," when used in any other context that is herein above set forth, means to describe the act, word, situation, event, etc. (and/or conduct, course of action of any nature whatsoever, including without limitation any failure to act, to engage in any conduct or to pursue any course of action), to be identified as fully as possible and identify each document or communication or act in which such act, word, situation, event, conduct or course of action, etc., was recorded, refers or relates to each answer, forms all or part of the basis for an answer; and/or corroborates and answer.

25. You may, in lieu of identifying any Document or written communication, attach a true copy of each Document as an exhibit to the answers to these interrogatories, On each occasion in which you choose to attach a Document as your answer to an interrogatory, identify the portion of the Document that answers the interrogatory.

26. Identify each Document produced pursuant to an interrogatory by the paragraph number of

the interrogatory in response to which it is produced and by the file from which the document was produced.

27. If any of the information furnished in an answer to all or part of an interrogatory is not within your personal knowledge, identify each person who has personal knowledge of the information furnished in such answer and each person who communicated to you any part of the information furnished.

28.      If the answer to all or any part of the interrogatory is not presently known or available to you, include a statement to that effect, furnish the information now known or otherwise available to you, and respond to the entire interrogatory by supplemental answer, in writing, under oath, within ten days from the time the entire answer becomes known or available to you, but. in no event less than five days prior to trial.

29. If you contend that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any one of these interrogatories or any subpart thereof, then in response to the appropriate interrogatory or subpart:

(a)   set forth all such information that is available to you without undertaking what you contend to be an unreasonable burden;

(b)   state with particularity the grounds on which you contend that additional efforts to obtain such information would be unreasonably burdensome; and

(c)   describe with particularity the efforts made by you to secure such information, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such information, including the duration of time spent and nature of work done by each person.

<u>INTERROGATORIES</u>

      1.     Please state the name, title, current business address, and phone number of all persons answering or assisting with the answering of this set of interrogatories.

      2.     Please state the date that the Insurance Company first received notice from the Insureds for a claim of benefits under the Policy for property damages as described in the Complaint in this lawsuit and how that noticed was received.

3.    In reference to the Insurance Company's coverage determination of the Insured's claim for benefits under the Policy, please state:

a.    The date the coverage determination was made.

b.    Identify each person who participated in the coverage determination.

c.    Describe each and every fact upon which you relied in forming the basis for your coverage determination.

d.    Identify each document sent by the Insurance Company to the Insured detailing the reasons for the coverage determination.

e.          State the location, including, page(s), line(s) and paragraph number(s), and the exact language contained in the Policy, which you used to base your coverage determination.

4.          Identify each person, by name, address, phone number and position, whom on behalf of the Insurance Company, inspected the Insured Property in reference to the claim for benefits under the Policy, including his or her field of expertise and the date of each inspection.

5.    Identify each written estimate for repair or replacement, including the amount set forth in each estimate, which has been provided to the Insurance Company in reference to the Insured's claim for benefits under the Policy.

6.    Identify all persons (other than the Insurance Company) believed or known by you, your agents or attorneys to have knowledge concerning any of the issues raised by the pleadings, specifying the subject matter about which witnesses have knowledge and state whether you have obtained any statements (oral, written or recorded) from any of said witnesses, list the dates any such witness statements were taken, by whom any such witness were taken and who has the present possession, custody and control of any such statements.

7.     Identify all persons who, on the Insurance Company's behalf, have in any way participated in the investigation, evaluation, adjusting or handling of the claim involved hereto. Please specify the nature of the participation for each and every such person and give the time period during which they participated.

8.     Please describe all requests made by the Insurance Company upon the Insured, (i.e., requests for examination under oath, information, documents, sworn proofs of loss, etc.,) in reference to this claim and the dates made.

9.     With reference to each of your affirmative defenses raised in the lawsuit, please describe each and every fact upon which you rely to substantiate such affirmative defense, including identification of all witnesses to each such fact.

IN WITNESS WHEREOF, the Insurance Company has executed the foregoing answers to interrogatories and states that same are true and correct to the best of the undersigned's knowledge and belief.

_____

Western World  Insurance Company

By: _____

Title: _____

STATE OF FLORIDA                    }

COUNTY OF _____               }

BEFORE    ME,   the   undersigned   authority,   personally   appeared, _____, who is personally known to me or who has produced as identification, being first duly sworn according to law, deposes and says that he executed the foregoing Answers to Plaintiff's First Set of Interrogatories and that they are true and correct to the best of his/her knowledge and belief.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of

my office; in the County and State last aforesaid, this_____day of _____ ,202_.

_____

Notary Public

My Commission Expires:

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.:

Ana Bracho,

Plaintiff,

v.

Western World  Insurance Company,

Defendant.

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Plaintiff, Ana Bracho, (the "Insured"), pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, hereby requests that Defendant, Western World  Insurance Company (the "Insurance Company"), make available for inspection and duplication, in response to each numbered paragraph, all documents specified herein which are in its possession, custody or control or in the possession, custody or control of its agents, accountants or attorneys. Defendant is requested to make such production within the time period prescribed either by the Florida Rules of Civil Procedure or by order of the Court.

I          DEFINITIONS AND INSTRUCTIONS

1.  The terms "you", "your(s)", "yourselves", "defendant", and/or "Insurance Company " means the party or parties to which this request is addressed, and any agents, representatives, attorneys or other persons acting or purporting to act, on its behalf.

2.  The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body,

group of natural persons, or other entity.

3.   The "Complaint" means the Complaint filed by the Insured in this action.

4.   The term "document" shall mean any written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records).

5.   The term "all documents" means every document or group of documents *as* above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

6.   The term "Insurance Company" shall refer to the Defendant in this action, its affiliates, subsidiaries, predecessors, successors, agents, attorneys and/or anyone else acting in its behalf.

7.   The term "communication(s)" means every manner or means of disclosure, transfer or exchange of information, whether in person, by telephone, mail, personal delivery or otherwise.

8.   As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall include each of the other genders.

9.   The terms "and", "as well as" and "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The terms "each" and "every" means "each and every," the term "including" means "including without limitation."

10.  The terms "referring to" or "relating to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

11.  The terms "locate" or "location" means to state the present whereabouts of each document and to identify the person(s) having possession, custody or control thereof.

12.  The term "to date" shall mean the date on which you respond to this request,

13.  When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

14.  When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

15.  In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

16. The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside their scope.

17. If you claim that the attorney/client or any other privilege or the attorney's work product doctrine applies to any document, the production of which is called for by these requests, then for each such document, state its date, subject matter, author(s), recipient(s), present custodian and all past custodians, and such additional information concerning the claim of privilege or work product doctrine as will permit the adjudication of the propriety of the claim.

18. If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

(a)     furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;

(b)     state with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and

(c)     describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each person.

19. Unless otherwise indicated, all requests include the time period from the date of the Loss to the date you receive this request.

20. The term "Insured" shall refer to the Petitioner(s), affiliates, predecessors, successors, agents, attorneys and/or anyone else acting in their behalf.

## II.     LOST/DESTROYED DOCUMENTS

If any document to be produced was, but is no longer, in your possession, custody or control and/or has been destroyed or is otherwise incapable of production or state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; (d) if not destroyed, the reason why the document is incapable of production; and (e) the subject matter of the document.

## III.     DOCUMENTS REQUESTED

1.      A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insured, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

2.      Each and every timesheet, log and all other documents reflecting time spent by the Insurance Company at the Property.

3.      Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans

to visit the Property on behalf of the Insurance Company.

4.     Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insured's loss as described in the Complaint.

5.     Any and all correspondence or written communications from the Insured, or their representatives to the Insurance Company which in any manner pertains to the Insured's loss as described in the Complaint.

6.     Any and all photographs taken by the Insurance Company of the Property.

7.     All documents containing information regarding any statement by the Insured at any time during the Insurance Company's handling of the Insured's loss, including adjuster notes, claim reports, interoffice memorandum, tape recordings, Examination Under Oath transcripts, and any other transcripts or written statements from the Insured. If you claim privilege over any of these documents, please provide redacted documents showing only any statement by the Insured at any time during the Insurance Company's handling of the Insured's loss

8.     Any and all bills or estimates for repairs to the Property submitted to the Insurance Company.

9.     Any and all checks paid to, or on behalf of the Insured, representing insurance coverage payment(s) for the loss.

10.     All reports which in any manner pertain to the Insured's loss, including reports by any expert retained by the insurance company.

11.     All Proof of Loss forms pertaining to the subject loss that were sent or received by

you or your representatives to or from the Insured or the Insured's representative.

12.     All inspection reports or other documents that evidence the cause of the damages at issue in the subject claim as determined by you or your representative.

13.     All applications for insurance submitted by or on behalf of the Insured to you or your representatives in connection with obtaining or renewing the subject Policy.

14.     All photographs or videos taken by you or your representative(s) in connection with the initial issuance or renewal of the subject Policy.

15.     The complete underwriting file for the Insured.

16.     A current curriculum vitae (CV) or resume for each person retained on your behalf for the purpose of rendering an opinion as to the cause or extent of the subject damage.

17.     All affidavits or sworn statements in your possession pertaining to the subject loss.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: Western World  Insurance Company c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, together with a copy of the Complaint.

Property & Casualty Law Group
Counsel for the Insured
2307 Douglas Road, Suite 302
Miami, Fl 33145
Tel.: 305-961-1038
CSanti@pclawgroup.com

**/s/ Carlos Santi**

_____
Carlos L. Santi, Esq.
Florida Bar No. 70529

Filing # 126780461 E-Filed 05/13/2021 04:19:43 PM

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.: 2021-011281-CA-01

Ana Bracho,

Plaintiff,

v.

Western World  Insurance Company,

Defendant.

TO STATE OF FLORIDA:
To Each Sheriff of Said State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this
action on Defendant:

**Western World  Insurance Company**
**c/o The Florida Chief Financial Officer as RA**
**200 E. Gaines Street, Tallahassee, Florida 32399-4201**

Each Defendant is required to serve written defense to the Complaint or Petition on Plaintiff's Attorney,
to wit:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

**within 20 days after service of this Summons on that Defendant**, exclusive of the day of service,
and to file the original of the defenses with the clerk of this Court either before service on Plaintiff's
attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that
Defendant for the relief demanded in the Complaint or Petition.

DATED ON

As Clerk of Said Court

Court Seal                                                    By:_____
                                                             As Deputy Clerk

## **IMPORTANT**

A Complaint has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy of photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## **IMPORTANTE**

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notifiicacion, para contestar la demanda adjunta, por escrito, y presentarla ante de esta tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrita, incluyendo el numero del caso y los nombres de las partes, interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, puede perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo deseas, puede usted consultar a un abogado immediatamente.  Si no cononce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la personal denominada abajo como "Plaintiff/Plaintiff's Attorney".  (Demandante o Abogado del Demandante).

Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, to wit:

Plaintiff's attorney is:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

DATED ON

As Clerk of said Court


By:_____
As Deputy Clerk

(Court Seal)

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

CASE NO.: 2021-011281-CA-01

Ana Bracho,

Plaintiff,

v.

Western World  Insurance Company,

Defendant.

TO STATE OF FLORIDA:
To Each Sheriff of Said State:

YOU ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on Defendant:

> **Western World  Insurance Company**
> **c/o The Florida Chief Financial Officer as RA**
> **200 E. Gaines Street, Tallahassee, Florida 32399-4201**

Each Defendant is required to serve written defense to the Complaint or Petition on Plaintiff's Attorney, to wit:

> **Carlos L. Santi, Esq.**
> **Property & Casualty Law Group**
> **2307 Douglas Road, Suite 302**
> **Miami, Fl 33145**

**within 20 days after service of this Summons on that Defendant**, exclusive of the day of service, and to file the original of the defenses with the clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

DATED ON     5/20/2021

As Clerk of Said Court

Court Seal

By:_____
As Deputy Clerk

## IMPORTANT

A Complaint has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy of photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente.  Tiene veinte (20) dias, contados a partir del recibo de esta notifiicacion, para contestar la demanda adjunta, por escrito, y presentarla ante de esta tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrita, incluyendo el numero del caso y los nombres de las partes, interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, puede perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo deseas, puede usted consultar a un abogado immediatamente.  Si no cononce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la personal denominada abajo como "Plaintiff/Plaintiff's Attorney".  (Demandante o Abogado del Demandante).

Each defendant is required to serve written defenses to the complaint or petition on Plaintiff's attorney, to wit:

Plaintiff's attorney is:

**Carlos L. Santi, Esq.**
**Property & Casualty Law Group**
**2307 Douglas Road, Suite 302**
**Miami, Fl 33145**

DATED ON

As Clerk of said Court


By:_____
As Deputy Clerk

(Court Seal)

Filing # 127686442 E-Filed 05/27/2021 02:45:35 PM

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

ANA BRACHO

PLAINTIFF(S)

VS.

WESTERN WORLD INSURANCE COMPANY

DEFENDANT(S)
_____/

SUMMONS, COMPLAINT, DISCOVERY

| | |
|---|---|
| CASE #: | 2021-011281-CA-01 |
| COURT: | ELEVENTH JUDICAL CIRCUIT COURT |
| COUNTY: | MIAMI-DADE |
| DFS-SOP #: | 21-000244978 |

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Tuesday, May 25, 2021 and a copy was forwarded by ELECTRONIC DELIVERY on Thursday, May 27, 2021 to the designated agent for the named entity as shown below.

WESTERN WORLD INSURANCE COMPANY
JOHN KYLE
300 KIMBALL DRIVE
PARSIPPANY , NJ 07054

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jimmy Patronis
Chief Financial Officer

CARLOS SANTI
PROPERTY & CASUALTY LAW GROUP
2307 DOUGLAS ROAD
SUITE 302
MIAMI, FL 33145

JM1